UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:05CV-518-H

KAREN BLOOM                                                                                   PLAINTIFF

V.

HARTFORD LIFE AND ACCIDENT                             DEFENDANT
INSURANCE COMPANY

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dr. Karen Bloom ("Bloom") applied for long-term disability benefits from Hartford Life and Accident Insurance Company ("Hartford") under an ERISA plan. Hartford denied Bloom's benefits primarily based upon the policy's pre-existing condition exclusion, and subsequently also denied her appeal. Bloom has now filed an "Opening Brief in Support of ERISA Benefits," which the Court will treat as a motion for summary judgment.

I.

For all times relevant here, Bloom was employed by Rehabilitation Associates., which created an employee benefit program. As part of that program, Hartford issued a group long-term disability policy to Bloom. The policy is only offered to active, full-time employees; under the policy's definition, employees must work 30 hours per week to be considered active, full-time employees. The policy has a pre-existing condition exclusion: no benefits are paid if a disability within 365 days of the policy's effective date is caused by a pre-existing condition. A pre-existing condition is further defined as a condition for which a participant received treatment in the 180 days immediately prior to the policy's effective date. Therefore, if a participant became disabled during the first year of the policy as a result of a pre-existing condition, that

participant would not be entitled to benefits under the policy.

The policy defines "disability" as either total disability or residual disability. The policy defines "Total Disability" as a condition where the employee is "unable to perform the Material and Substantial Duties of you [*sic*] Own Occupation due to an Injury or Sickness, and [is] not earning more than 20% of your Average Monthly Pay." "Material and Substantial Duties" are further defined as "duties that are normally required for the performance of your Own Occupation and cannot be reasonably omitted or modified." The policy defines Residual Disability as follows:

> Residual disability . . . means as a result of an Injury or Sickness, you are unable to perform the Material and Substantial Duties of your Own Occupation on a full-time basis, but you are
> 1. performing at least one of the Material Duties of your Own Occupation or another occupation on a full-time basis; or
> 2. performing each of the Material Duties of your Own Occupation or another occupation on a part-time basis; and
> 3. you are earning more than 20% of your Average Monthly Pay, but less than 80% of your Average Monthly Pay.

Bloom was first diagnosed with multiple sclerosis ("MS") in November 1999. The effective date of the policy was October 1, 2002. Blooms admits that she was treated for her MS within 180 days of the start of the policy, and therefore that her MS was a "pre-existing condition" as defined in to the policy. Bloom applied for long-term disability benefits under the Hartford policy, claiming her disability began in late February or early March 2004.

In a letter dated September 21, 2004, Hartford denied Bloom's application for benefits. The Court can find two grounds for Hartford's conclusions: (1) Bloom became disabled due to MS as of December 1, 2002 under the terms of the policy, thus triggering the Pre-Existing Condition exclusion; and (2) Bloom was no longer a full time employee as of December 1, 2002.

As to the first point, Hartford did not specify whether Bloom was "Totally Disabled" or "Residually Disabled" as of December 1, 2002. Hartford said that the December 1, 2002 "date was determined by reviewing your work schedule provided by your Employer . . . ." In explaining its conclusion, Hartford specifically pointed to the fact that while it found that Bloom worked 30.5 hours per week between February 1, 2002 and November 30, 2002, it found that she worked only 18.5 hours per week between December 1, 2002 and February 11, 2003. Hartford therefore concluded that, under the pre-existing condition exclusion, Bloom was not entitled to benefits.

Hartford did not place great emphasis on the second point. However, based on the work schedule provided by Bloom's employer, Hartford found that Bloom was no longer an active, full-time employee by December 1, 2002. This implies that Hartford found that Bloom was not even entitled to participate in the policy as of December 1, 2002, although the September 21, 2004 letter did not specifically make that conclusion.

Bloom appealed this determination, asserting that she was not disabled before October 2, 2003 (i.e. the end of the one year pre-existing condition exclusion period) and that she was in fact not disabled until February 2004. In a letter dated July 8, 2005, Hartford denied Bloom's appeal, again relying heavily upon Bloom's work records. Hartford also discussed the independent medical review (not an examination) conducted by Dr. Robert Marks.

II.

The parties agree that the "arbitrary and capricious" standard of review applies in this case. *See Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991). Although this standard is deferential to the administrator's decision, it does not automatically mandate

3

adherence to Hartford's decision. *See McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). The Court may uphold Hartford's decision to deny ERISA benefits only if the decision was rational and reasonable based upon the evidence and policy provisions. *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005).

### III.

To take advantage of the pre-existing disability exclusion, Hartford must have some evidence that December 1, 2002, Bloom was disabled due to her MS, as defined in the policy. On many levels, Hartford had no such evidence.

Medical evidence is normally required to provide an employee's disability. If the roles were reversed here – that is, if Bloom were attempting to prove that she became disabled sometime during the one-year exclusion period – Hartford would rightly insist that Bloom produce contemporaneous medical evidence of her disability. However, Hartford has made its decision here without adequate review of the contemporaneous medical evidence. Rather, Hartford's conclusion relies overwhelmingly on *circumstantial* evidence of Bloom's medical condition – work records and salary reports. Hartford does not even rely on medical examinations conducted between December 1, 2002 and February 11, 2003 – the very period in which Hartford determined that Bloom became disabled.

Standing alone, the evidence regarding Bloom's working hours and salary is somewhat ambiguous. It is certainly true that Bloom's weekly working hours varied from December 1, 2002 until October 1, 2003: some months Bloom worked more than others. It is also clear that Bloom was not working for several stretches during this period: she took a vacation spanning parts of December 2002 and January 2003, and she was out from work with a fractured ankle for

two separate multi-week periods in 2003. These periods of absence clearly affected her average hours worked per week. No one disputes that Bloom's salary declined significantly from 2002 to 2003: in 2002, Bloom earned $155,439.84, and in 2003, Bloom earned $40,000. Bloom asserts that this decline was caused by financial problems at Rehabilitation Associates and a subsequent business reorganization, and was not related to her disability. Thus, the evidence of work hours only raises other questions, but it does not answer the issue of disability.

Indeed, the focus on Bloom's hours only shows part of the picture. What is really important is the evidence of her abilities to perform the requirements of her job. Indeed, Hartford's own definitions of "Total Disability" and "Residual Disability" nowhere mention *hours worked* as benchmarks for determining disability. The definitions instead rely upon the ability to perform certain tasks and pay levels. To make such a determination requires an examination of relevant medical information. Nevertheless, the September 21, 2004 denial of benefits letter appears not to mention Bloom's ability to perform certain tasks or Bloom's salary levels – only her work hours. The July 8, 2005 letter denying Bloom's appeal at least does mention the ability to perform certain tasks and salary levels – the very benchmarks laid out in Hartford's own definitions of "Disability" – but even the appeal denial letter does not refer to the policy's definitions or otherwise specify whether Hartford was finding Bloom "Totally Disabled" or "Residually Disabled." When an administrator's decision does not even refer to the dictates of its own policy, that decision is almost inherently arbitrary and capricious.

Here, the circumstantial evidence alone does not show enough about Bloom's condition.[1]

---

[1] Perhaps it is possible for Hartford to rely solely on the work history to provide a "reasoned explanation, based on the evidence, for a particular outcome." Thus making that decision not arbitrary or capricious. *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). However, the evidence must be much stronger than ours.

Where Hartford has referenced medical records and reports during the claims process, it does not draw reasonable conclusions from them.[2] For instance, in the letter denying Bloom's appeal, Hartford cited Dr. Marks' medical review and conclusion that "Dr. Bloom had neurological problems that impacted on function as least as far back as early 2003, however [*sic*] she was able to function and perform at some level to permit continued working except for those times where there was an injury." Hartford also discussed Dr. Marks' conclusion that Bloom's "limitations in gait distance and endurance would not have permitted her to fulfill all of her duties, such as physician emergency call." Dr. Marks' opinion, therefore, seems to be that during the relevant time period, Bloom's health was such that while she could not perform all her duties, her health would "permit continued working." Nevertheless, the July 8, 2005 letter concludes that the "records received support a date of disability of 12/1/02." These medical records simply do not prove a disability, as defined by the Hartford policy.

Furthermore, Dr. Marks' entire independent medical review is suspect in that Dr. Marks only reviewed a small smattering of actual medical records from the relevant exclusionary period (October 1, 2002 - October 1, 2003), and *no documents at all* from October 1, 2002 to April 16, 2003 – the very time period during which Hartford concluded that Bloom became disabled. It appears that Dr. Marks reviewed a total of merely five documents dating from the exclusionary period, all of which were dated after April 16, 2003. Of these, two addressed Bloom's ankle

---

[2] It is a disturbing note on the care with which Hartford reviewed Bloom's medical records and reports that both the letter from Dr. Marks detailing the results of his independent medical review and the July 8, 2005 letter from Hartford denying Bloom's appeal discuss Bloom's purported hospitalization from November 30, 2003 to December 2, 2003 for a variety of ailments, including Alzheimer's type dementia, chest pain, insomnia, and a urinary tract infection. Not only were these diagnoses inconsistent with the actual medical problems Bloom was having, but the document submitted by Hartford to support them (ADM 395 - 396) appears to *actually refer to an entirely different patient than Bloom*.

6

injuries and made no mention of MS. The other three, as at least as summarized by Dr. Marks, make no mention of any restrictions on Bloom's ability to work.

Dr. Marks also discussed Bloom's medical history with Dr. Roy Meckler, Bloom's attending physician. From the notes of that conversation as recorded by Dr. Marks, Dr. Meckler provided essentially no information about Bloom's condition during the exclusionary period. He certainly did not share any information to "fill in the gaps" in the documentary record. Dr. Marks simply received no evidence from which he could have reasonably concluded that Bloom became disabled as of December 1, 2002. He acknowledged as much in the conclusion of his letter to Hartford. His letter manifestly does not support Hartford's conclusion that Bloom became disabled as of December 1, 2002.

Finally, Hartford has improperly imposed the burden of proof on Bloom, essentially trying to force her to prove that she was *not* disabled as of December 1, 2002. Specifically, Hartford reviewed contemporaneous medical records from two of Bloom's treating physicians: Dr. Meckler and Dr. Matthew Rogers. As discussed above, Dr. Marks interviewed Dr. Meckler, who was unapparently unwilling "to provide a time course for the deterioration of Dr. Bloom's functionality." Hartford also contacted Dr. Rogers, who retracted an earlier statement he had made that Bloom became disabled on January 1, 2002. Hartford noted in its denial of Bloom's appeal that Dr. Rogers "did not present an argument against the establishment of 12/1/02 as the date of Disability."

In both of these situations, Hartford has confused the burden of proof. Hartford must show that its decision was reasonable and rational based upon the *evidence*, not upon the lack thereof. A plaintiff in a more typical ERISA case must present medical evidence to prove his or

7

her disability. Similarly, to take advantage of the disability exclusion, Hartford must put forward medical evidence that supports a reasonable conclusion that Bloom became disabled on December 1, 2002. The administrative record before this Court simply does not provide adequate medical evidence that Bloom became disabled on that date. Therefore, for all of these reasons, Hartford's decision to deny Bloom long-term disability benefits was arbitrary and capricious and Bloom is entitled to her benefits immediately, without any additional administrative proceedings below.

## IV.

In its initial letter denying benefits, Hartford made only a passing reference to the denial of Bloom's claim based on her not qualifying as a full time employee. Hartford has renewed this argument in the briefing before this Court. However, Hartford evidently abandoned this contention altogether by the time of the July 8, 2005 appeal denial letter. The appeal denial letter did not address (and the initial denial only obliquely addressed) the eligibility question; rather, both of Hartford's decisions focused on Hartford's determination that Bloom became *disabled* on December 1, 2002 (not on the fact that her hours worked relegated to her part-time status and, thus, ineligibility for benefits under the policy). Hartford cannot now make *post hoc* justifications for its decision, when it had ample opportunity to explain the grounds for its decision in its initial denial and subsequent appeal. Under the arbitrary and capricious standard, the Court must examine Hartford's proffered explanations during the administrative process – not those provided by its attorneys during proceedings in this Court. During the administrative process, Hartford never described to Bloom in any detail why she would be ineligible for benefits because of problems with her *eligibility* for benefits, instead discussing its determination

8

that she became *disabled* as of December 1, 2002.  Therefore the Court is forced to conclude that

Hartford has not provided a reasoned explanation for such an outcome.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for ERISA benefits is SUSTAINED

and Defendant is ordered to award Plaintiff the appropriate long-term disability benefits.

This is a final order.

cc:     Counsel of Record